UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

                                                             Chapter 13

STEPHEN NICHOLAS,

                                                             Case No. 07-73330-CEC

                      Debtor.
----------------------------------------------------------x
STEPHEN NICHOLAS,

                    Plaintiff,

       -against-                                Adv. Proc. 07-08222-CEC

MATTHEW E. OREN,

                    Defendant.
----------------------------------------------------------x
MATTHEW OREN,

                    Plaintiff,

       -against-                                Adv. Proc. 11-01026-CEC

HARVEY BERNSTEIN, et al.,

                    Defendants.
----------------------------------------------------------x

## DECISION

APPEARANCES:

Avrum J. Rosen, Esq.  
Law Offices of Avrum J. Rosen  
38 New Street  
Huntington, New York 11743  
Attorney for Stephen Nicholas

Cynthia M. Burke, Esq.  
265 Post Avenue, Suite 120  
Westbury, NY 11590  
Attorney for Stephen Nicholas

Matthew E. Oren  
77-17 138th Street  
Flushing, New York 11367  
Pro Se

CARLA CRAIG  
Chief United States Bankruptcy Judge

This matter comes before the Court on the submissions of the affidavits of Avrum J. Rosen ("Rosen") and Cynthia M. Burke ("Burke"), attorneys for Stephen Nicholas ("Nicholas" or the "Debtor"), in support of requests for fees and expenses in accordance with this Court's orders dated August 3, 2011 and August 8, 2011, which awarded Nicholas attorney's fees and expenses incurred in defending certain claims asserted against Nicholas in state court by Matthew Oren ("Oren"), on the grounds that the assertion of those claims violated Nicholas's discharge. The Law Offices of Avrum J. Rosen (the "Rosen Firm") seeks $15,520 in fees and $777.81 in expenses, and Burke seeks $6,200 in fees and $43.00 in expenses. Oren filed written objections to both requests for compensation. Based upon a review of the attorneys' affidavits and time records and Oren's objections thereto, the Rosen Firm and Burke are awarded fees and expenses as set forth below.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

Nicholas filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 27, 2007. On November 14, 2008, the Court confirmed Nicholas's Chapter 13 plan. Upon completing his plan, Nicholas received a discharge on October 6, 2009 pursuant to § 1328(a) of the Bankruptcy Code, and his bankruptcy case was closed.[1]

---

[1] Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.

Oren, a creditor in Nicholas's bankruptcy case whose claim was paid in full under Nicholas's Chapter 13 plan, commenced an action in state court (the "State Court Action") on June 5, 2010, asserting various causes of actions against Nicholas, the Rosen Firm, Rosen, Fred S. Kantrow, Allan Katz, and Harvey Bernstein (collectively, the "Defendants").

On November 3, 2010, Nicholas's bankruptcy case was re-opened to allow Nicholas to seek sanctions for contempt against Oren because certain of the claims asserted in the State Court Action violated the discharge Nicholas received upon completing his Chapter 13 plan.

On January 26, 2011, the State Court Action was removed to this Court as Adversary Proceeding No. 11-01026. Shortly thereafter, Defendants moved for judgment on the pleadings dismissing Oren's complaint. (Removed ECF Nos. 6, 14, 18, 21.)[2] In response to the Defendants' motion for judgment on the pleadings and Nicholas's motion for contempt, Oren filed a cross-motion and cross-application. (Removed ECF No. 24; ECF No. 83.)

For the reasons stated in a decision dated August 3, 2011 (the "Decision"), the Defendants' motion for judgment on the pleadings in Adversary Proceeding No. 11-01026 was granted, Nicholas's motion seeking sanctions for contempt against Oren for violating his discharge was granted, and Oren's cross-motion and cross-application were denied. Pursuant to §§105 and 524, Nicholas was awarded punitive damages in the amount of $5,000 for Oren's willful violation of Nicholas's discharge injunction. In addition, by orders dated August 3, 2011 and August 8, 2011 (the "Orders"), Nicholas was awarded attorney's fees and expenses incurred in defending the three causes of action that violated Nicholas's discharge, in bringing the motion to hold Oren in contempt for asserting those causes of action, and in reopening Nicholas's bankruptcy case.

---

[2] Citations to "ECF No." are to papers filed on the docket of this bankruptcy case; and citations to "Removed ECF No." are to Adversary Proceeding No. 11-1026, the state court action commenced by Oren that was removed to this Court.

Nicholas was directed to file and serve an affidavit setting forth, with supporting documentation, the attorneys' fees and expenses incurred in undertaking those activities. On August 15, 2011, Cynthia Burke, Esq. filed an affidavit in support of an award of attorney fees (the "Burke Affidavit"). (Removed ECF No. 41.) Avrum J. Rosen filed an affirmation in support of an award of attorney fees for the Rosen Firm on August 17, 2011 (the "Rosen Affirmation"). (ECF No. 97.)

On September 6, 2011, Oren filed a letter requesting, among other things, an extension of ninety days to submit his opposition to the Debtor's calculation of his attorney's fees and expenses. (ECF. No. 104.) Oren then filed his objections to the Rosen Firm's and Burke's requests for attorney's fees and expenses on September 20, 2011 ("Obj. to Rosen Aff." and "Obj. to Burke Aff."). (ECF No. 106; Removed ECF. No. 49.)

By Order dated October 7, 2011, Oren's request for an extension of time to submit his opposition to the Debtor's calculation of his attorney's fees and expenses was granted, and the deadline was extended until September 20, 2011.

On September 28, 2011, the Rosen Firm filed a response to Oren's objection to the Rosen Firm's calculation of its fees and expenses (the "Rosen Response"). (ECF No. 108.)

## DISCUSSION

A court's principal concern when awarding attorney's fees is to insure that the fees awarded are reasonable. As the fee applicants, the Rosen Firm and Burke "bear[] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." Allende v. Unitech Design, Inc., 783 F.Supp. 2d 509, 512 (S.D.N.Y. 2011) (quoting General Elec. Co. v. Compagnie Euralair, S.A., 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997)(alteration in original). The Rosen Firm and Burke must "document the application with contemporaneous time records," which "should specify, for each attorney, the date, the hours

expended, and the nature of work done."³ New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).   The Rosen Firm's and Burke's submissions comply with these requirements.  (See Burke Aff.; Rosen Aff.; Rosen Resp., Removed ECF No. 41; ECF No. 97; ECF No. 106.)

In this case, Nicholas's award of attorney's fees was issued in the form of a sanction pursuant to §§105 and 524.  When attorney's fees are awarded under the Court's inherent powers, courts use the lodestar approach, which has been held in this District to be "the method to be used to determine a 'reasonable' attorney fee in all the federal courts, including the bankruptcy courts." In re The Korea Chosun Daily Times, Inc., 337 B.R. 758, 766 (Bankr. E.D.N.Y. 2005) (quoting Matter of Cena's Furniture, Inc., 109 B.R. 575, 581 (E.D.N.Y. 1990)(citing cases)).  See e.g., In re Emanuel, 422 B.R. 453, 467 (Bankr. S.D.N.Y. 2010); In re Green, 422 B.R. 469, 477 (Bankr. S.D.N.Y. 2010) (employing the lodestar approach in awarding attorney's fees as a sanction pursuant to the court's inherent powers).

This approach requires the court to determine a lodestar amount, which constitutes "[t]he traditional starting point for determining a reasonable attorney's fee award" and "results in a presumptively reasonable fee." Underdog Trucking, L.L.C. v. Verizon Services Corp., 2011 WL 2844291, at *2 (S.D.N.Y.)(citing Perdue v. Kenny A. ex rel. Winn, --- U.S. ---, 130 S.Ct. 1662, 1672-73 (2010).  It is calculated "by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." Underdog Trucking, 2011 WL 2844291, at *2 (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany, 522 F.3d 182,

---

³ The Office of the United States Trustee's guidelines for reviewing applications for compensation under §330 similarly require "sufficient information about that the case and the application so that the Court, the creditors, and the United States Trustee can review it without searching for relevant information in other documents." (Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §330.)

186 (2d Cir. 2008).  The resulting total can then be adjusted on the basis of case specific considerations.  Arbor Hill, 522 F.3d at 186.

### A. Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay."  Arbor Hill, 522 F.3d at 190.  When considering what rate a client would be willing to pay, the Second Circuit has directed courts to look to the prevailing hourly rates within the district where the court sits.  Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983).  Courts are to consider the fee that is "customarily charged in the local community by someone who possesses similar skill, experience, expertise, stature and reputation who is faced with similarly novel and complex issues and who procures comparable results."  In re The Korea Chosun Daily Times, Inc., 337 B.R. at 766 (citations omitted).  The Second Circuit has also instructed courts, in determining a reasonable hourly rate, to bear in mind case-specific considerations such as the "Johnson factors."[4]  Arbor Hills, 522 F.3d at 190.

### I. Burke's Hourly Rate

Burke's fee calculation is based an hourly rate of $200.00 per hour, which she notes is $50.00 per hour less than her standard rate.  (Burke Aff. at p. 2, Removed ECF No. 41.)  Oren

---

[4] The "Johnson factors" are the twelve factors outlined by the Fifth Circuit in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974):
 (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

objects to Burke's hourly rate on the basis that it "exceed[s] the normal reasonable hourly fee within the forum." (Obj. to Burke Aff. at p. 4, Removed ECF No. 49.)

Burke's rate of $200.00 per hour is reasonable. The Burke Affidavit explains that Burke has been practicing law in New York for over thirteen years, the last five in her own practice. (Burke Aff. at pp. 2-3, Removed ECF No. 41.) Throughout that time period, bankruptcy and bankruptcy litigation have been a part of her practice. (Burke Aff. at p. 3, Removed ECF No. 41.) Oren provides no evidence or other support for his contention that $200.00 per hour is an unreasonable rate in the Eastern District of New York for such work. Contrary to Oren's assertion, $200.00 per hour is clearly a reasonable rate for an attorney of Burke's experience in this district.

## II. The Rosen Firm's Hourly Rates

The fee calculation for the Rosen Firm is more complex. The Rosen Firm's fee application includes hourly rates for different lawyers ranging from $225.00 to $475.00 per hour. The Rosen Firm's fee request represents a blended rate of $414.00 per hour. The timesheets attached to the Rosen Affirmation reflect that four members of the Rosen Firm worked on the case. Rosen, the senior partner in the firm, has been practicing bankruptcy law for more than twenty-five years, and billed his time at $450.00 per hour for 10.7 hours and $475.00 per hour for 17.8 hours. (Rosen Resp. at p. 1, ECF No. 108; Rosen Aff. Ex. A., ECF No. 97.) Kimberly Berson, an associate with the firm, has been practicing bankruptcy law for the past eighteen years, and billed her time at $350.00 per hour. (Rosen Resp. at pp. 1-2, ECF No. 108; Rosen Aff. Ex. A., ECF No. 97.) Deborah Dobbin, an associate with the firm, has been with the firm for ten years, practiced law for seventeen years, and billed her time at $350.00 per hour. (Rosen Resp. at p. 2, ECF No. 108; Rosen Aff. Ex. A., ECF No. 97.) George Bana, an associate with the

firm, has practiced law in New York for a little over a year, and billed his time at $225.00 per hour.  (Rosen Resp. at p. 2, ECF No. 108; Rosen Aff. Ex. A., ECF No. 97.)

Oren objects to each of the rates charged by Rosen, again arguing that they "exceed the normal reasonable hourly fee within the forum."  (Obj. to Rosen Aff. at pp. 6-8, ECF No. 106.)  In response to Oren's objection, Rosen explains that his firm's rates reflect the firm's costs, and as evidence of their reasonableness, Rosen points to more than ten Chapter 11 cases in which his firm's fees have been approved in this district.  (Rosen Resp. at pp. 2-3, ECF No. 108.)

However, the work performed by Rosen in this case is not typical of the work performed in a Chapter 11 case or a Chapter 13 case.  Rather, it is comparable to the type of work performed as litigation counsel to a Chapter 7 trustee.  A review of the rates charged by the Rosen Firm, as well as other firms, as litigation counsel to Chapter 7 trustees in this district shows that those rates are consistent with the rates sought by the Rosen Firm in this case.  (See e.g., 09-44974; 09-46513; 10-79754; 10-49733; 10-48273; 11-45956.)   Accordingly, considering the Rosen Firm's experience, the quality of the Rosen Firm's representation, and the results obtained in this case, and given that the rate sought by the Rosen Firm is similar to that "customarily charged in the local community," the hourly rates sought in the Rosen Affirmation are reasonable.  In re The Korea Chosun Daily Times, Inc., 337 B.R. at 766 (citations omitted).

B.      Reasonableness of Amount of Hours

Reviewing the number of hours expended for the purposes of the lodestar calculation requires a determination of "how much time was reasonably necessary for the successful accomplishment of the tasks in question."  Briese Lichttechnik Vertriebs GMBH v. Langton, 2011 WL 4756252, at *3 (S.D.N.Y. 2011) (citations omitted).  Time that is "excessive, redundant or otherwise unnecessary" should be excluded.  In re Korea Chosun Daily Times, Inc.,

337 B.R. at 767 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  If a court determines some of the time claimed by a party should be excluded, it may also use a percentage "deduction as a practical means of trimming fat from a fee application."  Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (quoting Carey, 711 F.2d at 1146).

    I.   Burke's Hours

In the State Court Action, Oren asserted five causes of action against Nicholas.  Nicholas was awarded attorney's fees incurred in defense of the three causes of action that were found to violate his discharge.  Although Burke's timesheets demonstrate that she spent thirty-three hours working on Nicholas's case, Burke attributes only two hours to time spent defending the two causes of action for which Nicholas was not awarded his attorney's fees.  Accordingly, Burke requests compensation for thirty-one hours of work.

Burke's timesheets do not separately delineate time spent working on each cause of action.  Although such a level of specificity is not typically required in fee applications, here the Court's ability to evaluate Burke's allocation of her time between compensable and non-compensable work is limited.  Given that Nicholas was awarded attorney's fees for the defense of three of the five causes of action asserted by Oren, a reduction of forty percent of the total hours expended by Burke is appropriate.  Therefore, Burke's compensable time will be reduced by thirteen hours, resulting in an award of fees for twenty hours of work.

Oren objects to Burke's billing "for legal research and drafting" on the bill dated April 28, 2011, asserting Burke had no reason to bill the hours in question because Burke stated in her affidavit that "Attorney Rosen had briefed the majority of the legal arguments applicable to the case." (Obj. to Burke Aff. At p. 4, Removed ECF No. 49.)  This is a mischaracterization of Burke's statement.  In the paragraph of the Burke Affidavit to which Oren refers, Burke

addresses the amount of time spent on the causes of actions that the Court found did not violate Nicholas's discharge and for which Nicholas was not awarded attorney's fees.  In reference to those causes of action, Burke explained that she only spent approximately two hours because of work performed by the Rosen Firm and her prior knowledge of that area of the law.  In light of the forty percent reduction of compensable hours, and given the length of many of Oren's filings, and the three hearings attended by Burke to defend her client, no further reduction in Burke's hours is appropriate.

II. The Rosen Firm's Hours

The Rosen Firm seeks compensation for 37.45 hours of work spent by his firm representing Nicholas in re-opening his bankruptcy case, removing the State Court Action to this Court, litigating Nicholas's motion for contempt sanctions against Oren, and defending Nicholas on the cross-motion asserted in response to the contempt motion.  The Rosen Firm's time records reflect that attorneys in the firm drafted a motion to reopen the case, a motion for contempt, and a response to Oren's cross-motion.  Rosen attended two hearings on the matter.  Taking into consideration this range of tasks in conjunction with the sheer length of Oren's responses and cross-motion, the time spent by the Rosen Firm was reasonable.

Oren raised several objections to the time claimed in the Rosen Affirmation.  First, Oren contends that the time the Rosen Firm expended on the case was excessive. (Obj. to Rosen Aff. at pp. 8-9, ECF No. 106.)  It is not appropriate for Oren, whose actions in contempt of Nicholas's bankruptcy discharge caused this litigation, to second guess the Rosen Firm's litigation strategy. In any event, courts are "not [to] penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight.'"  In re Korea Chosun Daily Times, Inc., 337 B.R. at 767 (quoting In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991)).  Moreover,

the time spent by the Rosen Firm on this case was not excessive, particularly given that Oren's approach to litigation--which involved lengthy, last minute responses and cross-motions, two of which included more than 100 pages of attached documents (ECF Nos. 84 and 87)--clearly increased the amount of time the Rosen Firm was required to spend on the matter.

Oren also argues that the timesheets attached to the Rosen Affirmation include duplicative entries, internally inconsistent time entries, and time entries not consistent with those of Burke's timesheets.  (Obj. to Rosen Aff. at pp. 8-9, 12, ECF No. 106.)  The first two of these objections lack merit.  The fact that both Rosen and a junior associate worked on a given draft does not render their work duplicative or unnecessary.  Rosen also sufficiently addressed the alleged internal inconsistencies in his time entries, explaining that he does not bill for all of his time spent attending internal firm meetings where other associates are billing time.  (Rosen Resp. at p. 3, ECF No. 108.)     This practice does not call into question Rosen's credibility, and indeed, inures to Oren's benefit.

In his objection, Oren also questions why Rosen billed more hours than Burke did for attending the same hearings. (Obj. to Rosen Aff. at p. 12, ECF No. 106.)    For the October 28, 2010 hearing, Rosen billed 2.4 hours, and for the May 19, 2011 hearing, he billed 3.5 hours.  Burke billed 1.75 hours, and 2.5 hours respectively for attending those same hearings.  Although this difference may be the result of differing amounts of travel time, Rosen's compensable hours will be reduced by 1.65 hours.

C. Lodestar Calculations

I.      Burke's Lodestar

Burke's Affidavit sufficiently supports an award for compensation of twenty hours of work at a rate of $200.00 per hour. Therefore, an award of $4,000 for Burke's work on this case is reasonable.

II.     The Rosen Firm's Lodestar

For the reasons discussed above, the hourly rates set forth in Rosen's Affirmation are reasonable, and the Affirmation reasonably supports compensating the Rosen Firm for 35.8 hours of work, resulting in a total award of $14,752.50.

A review of the Rosen Firm's timesheets supports additional reductions in the amount of fees awarded. First, the rate charged for work relating to the removal of the State Court Action should be reduced. While the removal was a necessary task, for which the Rosen Firm appropriately charged 1.35 hours, that work fell within the scope of Burke's representation, and therefore, those hours should be billed at Burke's hourly rate. Accordingly, there should be an additional reduction of $262.50 from the fees awarded to the Rosen Firm, lowering its total awarded fees to $14,490.00.

A review of the Rosen Firm's timesheets also indicates that certain tasks performed by Rosen and Kimberly Berson could have appropriately been performed by more junior members of the firm at a lower billing rate. Specifically, preparation of the notice to shorten time for the hearing on the motion to reopen (.6 hours at $350.00 per hour), the drafting of the order to show cause and the motion to reopen (3.7 hours at $475.00 per hour), preparation of the exhibits relating to the motion to reopen (2.1 hours at $450.00), review of the order to show cause (.5

hours at $450.00 per hour), revision of the order to show cause (.4 hours at $450.00 per hours), transfer of the order to show cause (.2 hours at $475.00 per hour), calling other counsel in the case regarding the notice of removal (.3 hours at $450.00 per hour), and forwarding of the order reopening the case to the relevant parties (.1 hours at $475.00 per hour) could all have been performed by the Rosen Firm's junior associate. Accordingly, the fees awarded for those tasks will be awarded at a rate of $225.00 per hour, reducing the total fees awarded to the Rosen Firm by $1,817.50.

Oren also argues that that Rosen committed fraud on the court during the course of Nicholas's bankruptcy case, and should therefore not be awarded any fees with respect to his representation of Nicholas. (Obj. to Rosen Aff. at pp. 13-19, ECF No. 106.) This is nothing more than a rehash of an argument Oren has repeatedly made to this Court, and which has repeatedly been rejected. (See e.g., Decision at pp.12-17, ECF No. 92.) No further reductions or enhancements are justified in this case. The Rosen Firm is awarded $12, 672.50 in fees.

D. Requested Expenses

Pursuant to the Orders, Nicholas was also awarded the expenses incurred in defending the causes of action that violated his discharge injunction, in bringing the motion to hold Oren in contempt for asserting those causes of action, and in reopening Nicholas's bankruptcy case. Burke seeks expenses totaling $43.00 for the cost of her travel to attend the hearings. This expense is reasonable, and clearly within the scope of the expenses awarded in the Orders.

The Rosen Firm seeks reimbursement of $777.81 in expenses. The expenses the Rosen Firm seeks reimbursement for include travel costs, shipping costs, legal research expenses, court costs, and the costs of re-opening Nicholas's bankruptcy case. The expenses the Rosen Firm seeks are reasonable, and within the scope of the expenses awarded.

Oren did not object to the expenses requested by either Burke or the Rosen Firm.

CONCLUSION

For the reasons set forth above, Burke is awarded fees of $4,000 and expenses of $43.00, and the Rosen Firm is awarded fees of $12,672.50 and expenses of $777.81.  Separate judgments for these awards, and for the punitive damages awarded in the Decision, will be entered.



**Dated: Brooklyn, New York**
**November 14, 2011**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**